UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **INFORMATION** |
| Plaintiff, | 18 U.S.C. § 371 |
| v. | |
| 1. MOHAMED ALI HUSSEIN and<br>2. LUL BASHIR ALI, | |
| Defendants. | |

THE UNITED STATES ATTORNEY CHARGES THAT:

At times relevant to the information:

## INTRODUCTION

1. The defendants participated in a multi-million dollar scheme to defraud the federal child nutrition program, a program designed to provide free meals to children in need. The defendants obtained, misappropriated, and laundered millions of dollars in program funds that were intended as reimbursements for the cost of serving meals to children. The defendants exploited changes in the program intended to ensure underserved children received adequate nutrition during the Covid-19 pandemic. Rather than feed children, the defendants exploited the Covid-19 pandemic—and the resulting program changes—to enrich themselves by fraudulently misappropriating millions of dollars in federal child nutrition program funds, which they spent for their own personal benefit on such expenditures as vehicles and real estate.

SCANNED
MAR 10 2023
U.S. DISTRICT COURT MPLS

### A.     Background on the Federal Child Nutrition Program

2.     The Food and Nutrition Service is an agency of the United States Department of Agriculture (USDA) that administers various federal child nutrition programs, including the Summer Food Service Program and Child and Adult Care Food Program (together, the "Federal Child Nutrition Program").

3.     The Summer Food Service Program is a federal program established to ensure that children continue to receive nutritious meals when school is not in session. The Summer Food Service Program reimburses non-profit organizations and other participating entities that serve free healthy meals and snacks to children and teens in low-income areas.

4.     The Child and Adult Care Food Program is a federal program that reimburses non-profit organizations and other participating entities that serve healthy meals and snacks to children and adults at participating child care centers, day care homes, and after-school programs.

5.     The Federal Child Nutrition Program operates throughout the United States. The USDA's Food and Nutrition Service administers the programs at the national and regional levels by distributing federal funds to state governments, which provide oversight over the Federal Child Nutrition Program.

6.     The Minnesota Department of Education (MDE) administers the Federal Child Nutrition Program in Minnesota.

7.     Meals funded by the Federal Child Nutrition Program are served by "sites." Each site participating in the Federal Child Nutrition Program must be sponsored by a sponsoring organization that is authorized to participate in the

Federal Child Nutrition Program. Sponsors are required to submit an application to MDE for each site. Sponsors are responsible for monitoring each of their sites and preparing reimbursement claims for their sites.

8. Sponsors submit reimbursement claims to MDE on behalf of sites under their sponsorship. The USDA then provides federal reimbursement funds on a per-meal basis. MDE provides the federal funds to the sponsoring agency, which in turn pays the reimbursements to the sites under its sponsorship. The sponsoring agency retains 10 to 15 percent of the funds as an administrative fee in exchange for sponsoring the sites, submitting reimbursement claims, and disbursing the federal funds.

9. Historically, the Federal Child Nutrition Program has generally functioned by providing meals to children involved in educational-based programs or activities. During the Covid-19 pandemic, however, the USDA waived some of the standard requirements for participation in the Federal Child Nutrition Program. Among other things, the USDA allowed for-profit restaurants to participate in the program. The USDA also allowed for off-site food distribution to children outside of educational programs. At the same time, the state government's stay-at-home order and telework policies made it for difficult to oversee the program. These changes left the program vulnerable to fraud and abuse.

**B. Feeding Our Future**

10. Feeding Our Future was a non-profit organization purportedly in the business of helping community partners participate in the Federal Child Nutrition Program. Aimee Bock was the founder and executive director of Feeding Our Future.

11. Prior to the onset of the Covid-19 pandemic, Feeding Our Future was a small non-profit that sponsored the participation of daycares and after-school programs in the Federal Child Nutrition Program.

12. Beginning in approximately April 2020, Feeding Our Future dramatically increased the number of sites under its sponsorship as well as the amount of Federal Child Nutrition Program funds received by those sites. Feeding Our Future went from receiving and disbursing approximately $3.4 million in federal funds to sites under its sponsorship in 2019 to nearly $200 million in 2021.

13. Bock oversaw a massive scheme to defraud carried out by sites under the sponsorship of Feeding Our Future. Bock and Feeding Our Future sponsored entities that submitted fraudulent reimbursement claims and fake documentation. Bock and her company sponsored the opening of nearly 200 Federal Child Nutrition Program sites despite knowing that the sites intended to and did submit fraudulent claims.

14. In exchange for sponsoring the sites' fraudulent participation in the program, Feeding Our Future received nearly $18 million in Federal Child Nutrition Program funds as administrative fees in 2021. Because the amount of administrative fees it received was based on the amount of federal funds received by sites under its sponsorship, Feeding Our Future received tens of millions of dollars in administrative fees to which it was not entitled due to its sponsorship and facilitation of sites fraudulent participating in the program.

15. In addition to receiving tens of millions in administrative fees, Feeding Our Future employees also solicited and received bribes and kickbacks from

individuals and sites under the sponsorship of Feeding Our Future. In effect, Feeding Our Future operated a pay-to-play scheme in which individuals seeking to operate fraudulent sites under the sponsorship of Feeding Our Future had to kick back a portion of their fraudulent proceeds to Feeding Our Future employees. Many of these kickbacks were paid in cash or disguised as "consulting fees" paid to shell companies created by Feeding Our Future employees to conceal the true nature of the payments and make them look legitimate.

### C. The Defendants and Their Roles

16. Defendant MOHAMED ALI HUSSEIN was the president and owner of Somali American Faribault Education ("SAFE"), a non-profit organization located in Faribault, Minnesota. SAFE operated a Federal Child Nutrition Program site under the sponsorship of Feeding Our Future.

17. Defendant LUL BASHIR ALI was the owner of Lido Restaurant, a small storefront restaurant located in Faribault, Minnesota. Lido Restaurant operated a Federal Child Nutrition Program site under the sponsorship of Feeding Our Future. Lido Restaurant also participated in the Federal Child Nutrition Program as a meal vendor that purported to provide and serve meals at the SAFE site.

18. Abdikerm Abdelahi Eidleh was a Feeding Our Future employee who solicited and received bribes and kickbacks from individuals and companies involved in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future.

## Count 1
(Conspiracy to Commit Wire Fraud)

19. From in or about April 2020 through in or about 2022, the defendants,

MOHAMED ALI HUSSEIN and
LUL BASHIR ALI,

conspired with each other, and others known and unknown to the grand jury, to devise a scheme and artifice to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, transmitted or caused to be transmitted writings, signs, signals, pictures, or sounds by means of wire, radio or television communication in interstate or foreign commerce, in violation of Title 18, United States Code, Sections 371 and 1343.

### Object and Purpose of the Conspiracy

20. The object and purpose of the conspiracy was to carry out a fraud scheme to obtain Federal Child Nutrition Program funds by submitting fraudulent claims that they were serving meals to hundreds or thousands of children a day.

### Manner and Means of the Conspiracy

21. The conspirators used the following manner and means, among others, to accomplish the objects and purpose of the conspiracy:

    a.    HUSSEIN enrolled SAFE in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future.

    b.    HUSSEIN falsely claimed that the SAFE site was serving meals to as many as 2,500 children a day, seven days a week. In support of these claims,

6

HUSSEIN submitted, and caused to be submitted, fake attendance rosters and invoices.

c. ALI enrolled Lido Restaurant in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future.

d. ALI falsely claimed that the Lido Restaurant site was serving meals to as many as 1,600 children a day, seven days a week. In support of these claims, ALI submitted, and caused to be submitted, fake attendance rosters and invoices.

e. Lido Restaurant also entered into a catering contract under which it received Federal Child Nutrition Program reimbursement funds for providing meals to be served at the SAFE site.

f. ALI claimed that Lido Restaurant served more than 700,000 meals to children between June 2020 and April 2021. Based on these fraudulent claims, HUSSEIN and ALI received more than $2.3 million in Federal Child Nutrition Program funds.

g. HUSSEIN claimed that SAFE provided more than 1.2 million meals to children between February and November 2021.

h. In all, HUSSEIN and ALI received more than $5 million in Federal Child Nutrition Program funds as part of the fraud scheme.

i. As part of this scheme, HUSSEIN paid more than $100,000 in kickbacks to Abdikerm Eidleh in exchange for Feeding Our Future's sponsorship of HUSSEIN and ALI's participation in the Federal Child Nutrition Program.

## Acts in Furtherance of the Conspiracy

22.  In furtherance of the conspiracy and to effect its unlawful objectives, the defendants committed and caused to be committed the following overt acts, among others, in the State and District of Minnesota, and elsewhere:

23.  On or about June 19, 2020, ALI and Aimee Bock submitted an application to enroll Lido Restaurant as a site in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future.

24.  On or about November 3, 2020, ALI sent Eidleh an email containing meal count forms claiming that the Lido Restaurant site had served breakfast and lunch to approximately 1,000 children a day, seven days a week, in October 2020.

25.  On or about November 30, 2020, HUSSEIN and Aimee Bock submitted an application to enroll SAFE as a site in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future.

26.  On or about March 4, 2021, ALI submitted meal count forms to Feeding Our Future claiming that the Lido Restaurant served breakfast and lunch to approximately 1,600 children a day, seven days a week, in February 2021.

27.  On or about July 7, 2021, HUSSEIN submitted to Feeding Our Future meal count forms claiming that the SAFE site served meals to approximately 2,500 children a day in June 2021. HUSSEIN also submitted fake invoices purporting to document the purchase of food from a meal vendor as well as a fake attendance roster purporting to identify the names of children who received meals at the SAFE site.

28. On or about July 21, 2021, ALI signed a vendor contract providing that Lido Restaurant would receive Federal Child Nutrition Program reimbursement funds for providing meals to be served at the SAFE site.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS

29. Count 1 of this Information is incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) in conjunction with Title 28, United States Code, Section 2461(c), and pursuant to Title 18, United States Code, Section 982(a)(1).

30. If convicted of any of Count 1 of this Information, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to Count 1 of the Information.

31. The property subject to forfeiture includes, but is not limited to:

   a. The real property and all structures located at 1155 Willow Street South, Faribault, Minnesota;

   b. The real property and all structures located at 1106 Shumway Court, Faribault, Minnesota; and

   c. The real property and all structures located at 35 St. Marks Bay, Faribault, Minnesota.

If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) as incorporated by Title 18,

United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____          _____
UNITED STATES ATTORNEY                           FOREPERSON